**FOLSOM–THIRD STREET MEAT CO., c/b/a United Meat Co., aka United Meat Co., a corporation, Plaintiff,**

v.

**Orville FREEMAN, Secretary of Agriculture of the United States of America, Defendant.**

**Monroe B. JACOBS et al., Plaintiffs,**

v.

**Orville FREEMAN, etc., Defendant.**

**Joseph BACCIOCCO et al., Plaintiffs,**

v.

**Orville FREEMAN, etc., Defendant.**

**Antone BACCIOCCO et al., Plaintiffs,**

v.

**Orville FREEMAN, etc., Defendant.**

**Civ. Nos. 41701–41702, 41705, 42725.**

United States District Court
N. D. California.
Nov. 12, 1969.

---

Angell, Adams & Holmes, San Francisco, Cal., for plaintiffs.

David Richard Urdan, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

### OPINION AND ORDER

GERALD S. LEVIN, District Judge.

The parties in all four of the cases here have agreed to consolidate their actions for the purpose of deciding them on cross-motions for summary judgment. The parties have agreed to have the matter decided on the basis of submitted affidavits and on stipulated facts. The defendant in each consolidated case is Orville Freeman, Secretary of Agriculture for the United States.

Summary judgment, under F.R.Civ.P. Rule 56, is an available and appropriate procedure for deciding a matter when there is no genuine issue of fact to be tried. See 6 Moore's Federal Practice Par. 56.04.

The facts, which are not in dispute, are as follows. The cases consolidated herein were filed after defendant notified each of the plaintiffs in 1963 that a fine of $100 per day [1] would be imposed for every day during which a form known as the "Annual Report of Packers" [2] was not filed pursuant to provisions under the Packers and Stockyards Act.[3] The fine was to begin 30 days after receipt of the notice.

The cases consolidated herein were commenced within that 30 day period and an order was issued staying imposition of any penalties resulting from failure to file. Said order has been extended by stipulation between the parties to include the "Annual Report of Packers" for all years subsequent to that covered by the original order.

Each of the plaintiffs is a California Corporation with its principal place of business in San Francisco, California. Each of the plaintiffs is a wholesale meats enterprise which purchases various types of fresh meats, including beef, pork, veal and lamb, in the form of carcasses and smaller cuts. They then break the carcasses and subdivide the meat into customer cuts for resale to their retail market and restaurant customers.

Plaintiffs purchase their meats from suppliers who are outside of California and, to a greater extent, from suppliers who are within California. Many of the suppliers who are within California are themselves engaged in the business of buying livestock "in commerce" for purposes of slaughter or receive their meats and meat foot products from out of state sources.

The Packers and Stockyards Act [hereafter referred to as "the Act"] is applicable to any "packers", as defined in the Act, who are engaged, *inter alia*, in the business "of manufacturing or preparing meats or meat food products for sale or shipment in commerce." 7 U.S.C. § 191.[4] See Safeway Stores,

---

1. The penalty provisions of 15 U.S.C. § 50 (1964) are made applicable through 7 U.S.C. § 222 (1964).

2. As required by 9 C.F.R. § 201.97 (1966).

3. 42 Stat. 159 (1921), as amended, 7 U.S.C. §§ 181–229 (1964).

4. § 191. "Packer" defined
   When used in this chapter—

The term "packer" means any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of manufacturing or preparing livestock products for sale or shipment in commerce, or (d) of marketing meats, meat food

Inc. v. Freeman, 125 U.S.App.D.C. 175, 369 F.2d 952, 954–955 (1966). For the purposes of these cross-motions for summary judgment, plaintiffs concede that they are engaged in the business of manufacturing or preparing meats.

The issue to be decided by these cross-motions for summary judgment is whether plaintiffs are so engaged "for sale or shipment in commerce."

The Act defines commerce as follows (7 U.S.C. § 182 (6)):

> The term 'commerce' means commerce between any State, Territory, or possession, or the District of Columbia, and any place outside thereof; or between points within the same State, Territory, or possession, or the District of Columbia, but through any place outside thereof; or within any Territory or possession, or the District of Columbia.

The Act defines a transaction deemed in commerce as follows (7 U.S.C. § 183);

> For the purpose of this chapter (but not in anywise limiting the definition in section 182 of this title) a transaction in respect to any article shall be considered to be in commerce if such article is part of that current of commerce usual in the livestock and

meat-packing industries, whereby livestock, meats, meat food products, or eggs, are sent from one State with the expectation that they will end their transit, after purchase, in another, including, in addition to cases within the above general description, all cases where purchase or sale is either for shipment to another State, or for slaughter of livestock within the State and the shipment outside the State of the products resulting from such slaughter. * * *

Pursuant to its power to regulate interstate commerce,[5] Congress passed the Packers and Stockyards Act in 1921 in order to remedy the then-existing wide-spread evils surrounding monopolistic practices on the part of the large meat-packing houses and stockyards. See Stafford v. Wallace, 258 U.S. 495, 513, 42 S.Ct. 397, 66 L.Ed. 735 (1922); Atl. Coast Line R. Co. v. Standard Oil Co., 275 U.S. 257, 272, 48 S.Ct. 107, 72 L.Ed. 270 (1927). The Act clearly was intended to bring within its coverage the complete chain of commerce and to regulate that entire chain of commerce to the extent that it may be necessary to effectively regulate a part of it that is actually commerce between the states.[6]

---

products, livestock products, dairy products, poultry, poultry products, or eggs, in commerce; but no person engaged in such business of manufacturing or preparing livestock products or in such marketing business shall be considered a packer unless—

(1) Such person is also engaged in any business referred to in clause (a) or (b) of this section, or unless

(2) Such person owns or controls, directly or indirectly, through stock ownership or control or otherwise, by himself or through his agents, servants, or employees, any interest in any business referred to in clause (a) or (b) of this section, or unless

(3) Any interest in such business of manufacturing or preparing livestock products, or in such marketing business is owned or controlled, directly or indirectly, through stock ownership or control or otherwise, by himself or through his agents, servants, or employees, by any

person engaged in any business referred to in clause (a) or (b) of this section, or unless

(4) Any person or persons jointly or severally, directly or indirectly, through stock ownership or control or otherwise, by themselves or through their agents, servants, or employees, own or control in the aggregate 20 per centum or more of the voting power or control in such business of manufacturing or preparing livestock products, or in such marketing business and also 20 per centum or more of such power or control in any business referred to in clause (a) or (b) of this section. Aug. 15, 1921, c. 64 § 201, 42 Stat. 160.

5. United States Constitution, Article I, § 8, Clause 3.

6. See H.Report 77, 67th Congress, 1st Session, p. 13 (1921); H.Report 324, 67th Congress, 1st Session, p. 3 (1921);

The few cases interpreting the meaning of "commerce" as used in the Act have left no doubt that the scope of the Act is to include all those activities and all those forms of commerce reasonably regulable thereunder in light of the purposes of the Act. In the first major case dealing with the Act, Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735 (1922), the United States Supreme Court noted its reach (258 U.S. at 516, 42 S.Ct. at 402):

> The stockyards are but a throat through which the current [of commerce] flows, and the transactions which occur therein are only incident to this current from the West to the East, and from one state to another. Such transactions can not be separated from the movement to which they contribute and necessarily take on its character.

The Court noted that Congress had framed the Act in keeping with the principles announced and applied in the earlier case of Swift & Company v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 49 L.Ed. 518 (1905) wherein the Court said: "[C]ommerce among the states is not a technical legal conception, but a practical one, drawn from the course of business." Stafford v. Wallace, supra, 258 U.S. at 520, 42 S.Ct. at 403.

In United States v. Tyson's Poultry, Inc., 216 F.Supp. 53, 61–62 (W.D.Ark. 1963) the court said that the Act

> [C]overs not only commercial activities which are a part of interstate commerce but also those activities which are a part of that current of interstate commerce usual in the meatpacking and poultry industries. [Citations.]

In Safeway Stores, Inc. v. Freeman, 125 U.S.App.D.C. 175, 369 F.2d 952 (1966) the question before the court was whether Safeway Stores and the Great Atlantic and Pacific Tea Company (A & P) were "packers" whose activities were "in commerce" and thus required to file the "Annual Report of Packers". The Court of Appeals affirmed the lower court's finding in favor of defendant Freeman pursuant to cross-motions for summary judgment filed therein. The Court of Appeals had little trouble in finding that the activities of the companies, which included, inter alia, carcass-breaking, meat-corning, meat sandwich spread preparation and the slicing and wrapping of meat and meat food products, were such as to make the companies "packers" for purposes of the Act. Safeway Stores, Inc. v. Freeman, supra at 954–958.

The Court of Appeals also dismissed summarily the plaintiffs' contention that they were not engaged "in commerce" by noting that the vertical integration of the meat market structure would not suffice to insulate their activities from the jurisdiction of the Secretary of Agriculture. Id. at 955. As the Court of Appeals concluded;

> Congress did not direct its legislation only to those particular concerns whose activities gave rise to the legislation, but to all who would engage in the activities spelled out in the Act. (Id. at 956.)

Most recently, the Court of Appeals of the Seventh Circuit in Swift & Company v. United States, 393 F.2d 247, 253 (7th Cir. 1968), reiterated the view that the Act is to have a broad reach in the interest of the American economy:

> The Act is remedial legislation and is to be construed liberally in accord with its purposes to prevent economic harm to producers and consumers at the expense of middlemen. Stafford v. Wallace, 258 U.S. 495, 521, 42 S.Ct. 397, 66 L.Ed. 735 (1922); Safeway Stores, Inc. v. Freeman, 125 U.S.App. D.C. 175, 369 F.2d 952, 956 (1966).

█ The principles espoused in these cases and the consistently liberal construction placed upon the Act by the

61 Cong.Rec. 4779, particularly the remarks of Congressman G. N. Haugen who had introduced the Bill and was one of its managers on the part of the House.

courts lead to the conclusion that the plaintiffs in the instant case are "packers" whose activities are "in commerce" for purposes of filing the "Annual Report of Packers" as required under the Act.

All the plaintiffs concede that they purchase meat and meat product supplies from out-of-state suppliers and that, to a more limited degree, have made sales out of state. Furthermore, much of the meat purchased by plaintiffs from California sources has in turn come from out-of-state sources, thus affecting commerce and rendering it subject to the Congressional power to regulate interstate commerce. United States v. Darby, 312 U.S. 100, 110, 118, 61 S.Ct. 451, 85 L.Ed. 609 (1941); United States v. Wrightwood Dairy Co., 315 U.S. 110, 124, 62 S.Ct. 523, 86 L.Ed. 726 (1942); Maryland v. Wirtz, 392 U.S. 183, 188, 191, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

■ Plaintiffs' final argument is the intimation that Congress may be without power to regulate the activities in question here, placing reliance on Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). The Schechter case, however, is both factually and philosophically inapposite. In Schechter, the Supreme Court struck down the N.I.R.A. codes of fair competition as an unconstitutional delegation of the legislative function from the Congress to the President. The Court regarded the codes as giving the President unfettered discretion to make whatever laws he might deem necessary or advisable. The Court also found that Congress was without power to regulate Schechter's sales since they were not in the "stream" of interstate commerce.

It is clear that the Schechter view of Congressional power over interstate commerce has undergone drastic revision in favor of considerably more extensive coverage since Schechter was handed down in 1935. National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 31, 34, 37, 57 S.Ct. 615, 81 L.Ed. 893 (1937); United States v. Darby, supra, 312 U.S. at 117–118, 61 S.Ct. 451; United States v. Wrightwood Dairy Co., supra, 315 U.S. at 121, 125, 62 S.Ct. 523; Wickard v. Filburn, 317 U.S. 111, 127–128, 63 S.Ct. 82, 87 L.Ed. 122 (1942); United States v. Sullivan, 332 U.S. 689, 693, 695–696, 68 S.Ct. 331, 92 L.Ed. 297 (1948); Maryland v. Wirtz, supra. The latest Supreme Court pronouncement of the test for the exercise of Congressional power under the Commerce Clause was set out in Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 255, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964):

[T]he determinative test of the exercise of power by the Congress under the Commerce Clause is simply whether the activity sought to be regulated is 'commerce which concerns more States than one' and has a real and substantial relation to the national interest.

Thus the Supreme Court has moved from a view of interstate commerce which was strictly geographical, through a view that required the activities in question to have a "direct and immediate effect" on commerce and thereby "burden" it, to the present view which requires that the activities in question merely "affect" commerce. In United States v. Sullivan, supra, for example, the Supreme Court found that Congress had power over the labelling of pills even after an intrastate sale and a lapse of six months occurred. The result, predicated in part on the special need for regulation where human health is concerned, is also pertinent here, for the Packers and Stockyards Act is also aimed, in part, at regulation of industries whose effect on human health is obvious. So even if Schechter were good law today, there is nothing to indicate that its reasoning or outcome would be dispositive in the case before us; rather, the unanimous thrust of Supreme Court opinions since Schechter has succeeded in limiting and modifying the views of Congressional power set forth in that opinion.

Therefore, defendant's motion for summary judgment is granted and plaintiffs' cross-motions for summary judgment are denied, and it is so ordered.

The foregoing will constitute the findings of fact and conclusions of law pursuant to F.R.C.P. Rule 52(a).